**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-4823

UNITED STATES OF AMERICA,

Plaintiff – Appellant,

v.

MICHAEL KENNETH YOUNG, a/k/a Mizzle,

Defendant – Appellee.

Appeal from the United States District Court for the District of South Carolina, at Columbia.  Margaret B. Seymour, Senior District Judge.  (3:15-cr-00051-MBS-1)

Submitted:  January 25, 2021                           Decided:  March 11, 2021

Before GREGORY, Chief Judge, WYNN, and HARRIS, Circuit Judges.

Reversed, vacated, and remanded with instructions by unpublished opinion. Chief Judge Gregory wrote the opinion, in which Judge Wynn and Judge Harris joined.

A. Lance Crick, Acting United States Attorney, Benjamin Neale Garner, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellant.  W. Michael Duncan, AUSTIN & ROGERS, PA, Columbia, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Chief Judge:

In 2016, a jury convicted Michael Young of three counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Following the district court's judgment and sentencing, Young appealed. This panel vacated one of Young's convictions, holding that the evidence supporting this conviction was the fruit of an illegal search. We then remanded for resentencing. On remand, Young objected to his status as an armed career criminal—an objection the district court sustained. But for the reasons discussed below, we reverse the district court's ruling and remand the case for resentencing.

I.

As we explained in *United States v. Young*, 751 F. App'x 381, 382–83 (4th Cir. 2018) (unpublished), the charges against Mr. Young arose out of four separate police encounters. During each encounter, police uncovered drugs, guns, or both. *Id.* These discoveries led to a six-count federal indictment, a jury trial, three convictions for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g), and a within-range sentence of 235 months' imprisonment followed by five years of supervised release.

After his judgment and sentencing, Mr. Young appealed, arguing the district court erred in denying two of his pretrial motions: a motion to sever and a motion to suppress. We affirmed two of Mr. Young's convictions, but vacated the third, holding that the district court erred by admitting fruit of an illegal search into evidence. *Id.* at 387–88. We then remanded the case for resentencing. *Id.*

2

On remand, the United States Probation Office prepared a revised pre-sentence report. The report designated Mr. Young as an armed career criminal, identifying three of Mr. Young's state convictions as predicate offenses: (1) a January 26, 2005 conviction for possession with intent to distribute crack cocaine, committed on March 19, 2003; (2) a January 26, 2005 conviction for possession with intent to distribute crack cocaine, committed on March 31, 2003; and (3) a September 7, 2006 conviction for distribution of crack cocaine, committed on May 25, 2005. Ultimately, the revised PSR recommended a guideline range of 235 to 293 months' incarceration.

Mr. Young objected. Relevant here, Mr. Young argued that his two January 2005 convictions did not qualify as "serious drug offenses" under ACCA. The district court sustained the objection. It explained that, based on the South Carolina sentencing sheets, it was "unclear" whether Young was convicted of possessing cocaine with the intent to distribute it, mere possession, or something else. J.A. 152. What's more, the Government was unable to provide a transcript of the sentencing hearing. Given the ambiguity of the sentencing sheets, the court was "not inclined to rule that [Young was] an armed career criminal without the benefit of the transcripts from the sentencing hearings." *Id.* In short, the district court held that the Government could not rely upon sentencing sheets containing clerical errors as proof of Mr. Young's prior convictions.

Without the ACCA enhancement, Mr. Young's total offense level was 24, his criminal history category was VI, and his guideline range was 100–120 months' imprisonment with one to three years of supervised release. The district court sentenced Mr. Young to 120 months in prison, to be followed by three years of supervised release.

3

The Government timely appealed.

## II.

A person convicted of violating 18 U.S.C. § 922(g) qualifies as an "armed career criminal" if she has three prior convictions for "a violent felony or a serious drug offense." Serious drug offenses include "offense[s] under State law, involving manufacturing, distributing, or possessing with intent to distribute a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(i), (ii). When evaluating a defendant's eligibility for an ACCA enhancement, we review a district court's legal conclusions de novo and its factual findings for clear error. *United States v. Sellers*, 806 F.3d 770, 772 (4th Cir. 2015).

It is undisputed that Young's September 2006 conviction for distribution of crack cocaine, in violation of S.C. Code Ann. § 44-53-375(B)(3) qualifies as a predicate offense. Response Br. at 5, ECF No. 25. The Government argues that the district court erred by failing to designate Young's two January 2005 convictions as predicate offenses as well. Opening Br. at 8–14, ECF No. 12. We agree.

### A.

To qualify as a "serious drug offense," Mr. Young's January 2005 convictions must "involv[e] . . . manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance." 18 U.S.C. § 924(e)(2)(A)(ii). Generally, we use the categorical approach to determine whether an offense falls within the category of crimes recognized as "serious drug offenses." *United States v. Williams*, 326 F.3d 535, 538 (4th Cir.

4

2003).  With this approach, we focus on the elements, rather than the facts, of the prior conviction.  *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016).  The court simply "lines up" the elements of the defendant's prior convictions alongside those of the generic offense and "sees if they match."  *Id.*  If a prior offense has the same elements as a qualifying offense in its "generic" form, then the prior conviction stands as a predicate offense under ACCA. *Descamps v. United States*, 570 U.S. 254, 261 (2013).  "[S]o too if the statute defines the crime more narrowly, because anyone convicted under that law is 'necessarily . . . guilty of all the [generic crime's] elements.'"  *Id.* (quoting *Taylor v. United States*, 495 U.S. 575, 599 (1990)). But "if the statute sweeps more broadly than the generic crime, a conviction under that law cannot count as an ACCA predicate, even if the defendant actually committed the offense in its generic form."  *Id.*

"The comparison of elements that the categorical approach requires is straightforward when a statute sets out a single (or 'indivisible') set of elements to define a single crime." *Mathis*, 136 S. Ct. at 2248.  But when the statute of conviction is "divisible," the inquiry loses some of its intuitive appeal.  Divisible statutes "comprise[] multiple, alternative, versions of the crime," *Descamps*, 570 U.S. at 262, rather than "various factual means of committing a single element," *Mathis*, 136 S. Ct. at 2249.  When a state conviction flows from a divisible statute, courts must use the "modified categorical approach" to "determine which of a statute's alternative elements formed the basis of the defendant's prior conviction."  *Id.*

The government may produce a limited class of documents—"*Shepard* documents"—to aid this analysis.  *Id.* at 262–63.  *Shepard* documents generally include the "statutory definition, charging document, written plea agreement, transcript of plea

5

colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard v. United States*, 544 U.S. 13, 16 (2005).

In January 2005, Mr. Young pleaded guilty to two counts of violating S.C. Code Ann. § 44-53-375(B)(3). Section 44-53-375(B) makes it is a felony to "manufacture[], distribute[], dispense[], deliver[], purchase[], . . . or possess[] with intent to distribute, dispense, or deliver methamphetamine or cocaine base." In *United States v. Furlow*, we held that this statute was divisible. 928 F.3d 311, 319–20 (4th Cir. 2019), *vacated on other grounds by Furlow v. United States*, 140 S. Ct. 2824 (2020) (Mem). Although the Supreme Court later vacated *Furlow* on different grounds, we—in line with some of our sister circuits—hold that the unchallenged portion of an opinion containing a vacated judgment is at least persuasive authority. *See, e.g.*, *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010) (treating a relevant decision that was vacated on other grounds as "persuasive authority"); *McKenzie v. Day*, 57 F.3d 1493, 1494 (9th Cir. 1995) ("Although the opinion was subsequently vacated, *Richmond* [*v. Lewis*, 948 F.2d 1473 (9th Cir. 1990)] remains persuasive authority"); *see also E.E.O.C. v. City of Norfolk Police Dep't*, 45 F.3d 80, 83 (4th Cir. 1995) (assuming without deciding that "when a judgment of this Court has been vacated by the Supreme Court, the opinion containing that judgment is still entitled to some precedential value."). For the reasons *Furlow*, 928 F.3d at 319–20 set forth, we now reaffirm that S.C. Code Ann. § 44-53-375(B)(3) is divisible.

The district court was therefore correct to apply the modified categorical approach, and in doing so, examine *Shepard* documents relating to Mr. Young's 2005 state convictions. The Government produced Mr. Young's charging documents and sentencing

sheets stemming from those proceedings. The sentencing sheets indicated that Mr. Young pled guilty to "PWID Crack Cocaine." But they also contained clerical errors. For example, the sentencing sheets twice referred to Mr. Young as "Michael Nathan Young" instead of "Michael Kenneth Young." And the sentencing sheet for one of Mr. Young's convictions indicated that, by pleading to § 44-53-375(B)(3), Mr. Young pled to a "serious" offense, while the other did not indicate as much.[*] The court determined that clerical errors in Mr. Young's sentencing sheets so compromised the documents' integrity that they could not reliably indicate Mr. Young's offense of conviction.

These clerical errors reflect an uncomfortable reality about the often-hurried system of pleas that makes up our criminal justice system. Still, they do not carry as much weight as the district court gave them. At sentencing, the government need only prove a defendant's eligibility for an ACCA enhancement by a preponderance of the evidence. *United States v. Rumley*, 952 F.3d 538, 547 (4th Cir. 2020). To meet that burden here, the Government produced sentencing documents that unambiguously indicated that Mr. Young pled guilty to "PWID Crack Cocaine"; documents bearing the signatures of the prosecuting attorney, defense counsel, the sentencing judge, and Mr. Young himself. Clerical errors, standing

---

[*]Mr. Young also argues that his sentencing sheets are inconsistent because one indicated that he pled guilty to a "lesser included offense," while the other did not. But this difference does not appear to reflect a clerical error. The indictments encompassing Mr. Young's January 2005 conduct charged him with violating two separate statutory provisions: S.C. Code Ann. § 44-53-375(B)(3) and S.C. Code Ann. § 44-53-375(C)(3). But Mr. Young did not plead guilty to both counts as charged. Rather, he pled guilty to two counts under § 44-53-375(B)(3): one count as it was charged in the indictment and one count as a lesser included offense of § 44-53-375(C)(3).

alone, must be more pervasive than exist here to undermine this strong, contemporaneous evidence of cross-party consensus on a defendant's offense of conviction.

We hold that the district court erred in holding that the Government could not rely upon Mr. Young's sentencing sheets to prove Mr. Young's 2005 offenses of conviction. These documents show by a preponderance of the evidence that the state court convicted Mr. Young of two counts of possession with intent to distribute crack cocaine, in violation of S.C. Code Ann. § 44-53-375(B)(3).

B.

Moreover, precedent compels our holding that S.C. Code Ann. § 44-53-375(B)(3) prescribed "a maximum term of imprisonment of ten years or more" for Mr. Young's January 2005 convictions. As we have previously explained, "two important and interrelated principles" guide this inquiry. *United States v. Sellers*, 806 F.3d 770, 776 (4th Cir. 2015). First, the relevant sentence is the "maximum sentence permitted by the defendant's offense of conviction, not the sentence the defendant actually received." *Id.* (citing *United States v. Bercian-Flores*, 786 F.3d 309, 315–16 (4th Cir. 2015)). Second, tools designed to cabin defendants' sentencing exposure do not alter the "maximum term of imprisonment . . . prescribed by law" unless they deprive the sentencing judge of her authority to impose "a qualifying term of imprisonment." *Id.* (internal quotations omitted). If a judge retains her discretion to sentence a defendant to the statutory maximum, then—notwithstanding a plea agreement, *United States v. Valdovinos*, 760 F.3d 322, 328–30 (4th Cir. 2014), the Youthful Offender Act, *United States v. Williams*, 508 F.3d 724, 728–30 (4th Cir. 2007), or the high end of a guidelines range, *Bercian-Flores*, 786 F.3d at 315–16—"the statutory maximum penalty

8

controls the outcome of the case." *Sellers*, 806 F.3d at 777; *but see United States v. Simmons*, 649 F.3d 237, 244 (4th Cir. 2011) (holding that when a sentencing statute "directly tie[s]" certain aggravating factors to the maximum term of imprisonment, a defendant's sentencing exposure is limited by what aggravating factors the sentencing court actually found).

Mr. Young nonetheless argues that his January convictions did not expose him to a penalty of ten years in prison because, under his negotiated plea agreements, his maximum penalty was ninety days. Response Br. at 6–7. This argument cannot survive our decision in *Valdovinos*, 760 F.3d at 327–29. There, we held that the defendant's negotiated plea agreement did not establish his maximum sentencing exposure because, under North Carolina law, "the sentencing judge remain[ed] free to reject the agreement." *Id.* at 328. State law did not allow "[]either a defendant []or a prosecutor [to] 'bind the State to the dispensation of a particular sentence . . . until the trial judge has approved of the proposed sentence.'" *Id.* (quoting *State v. Marlow*, 432 S.E.2d 275, 279 (N.C. 1993)). Accordingly, the state's sentencing statute—not the parties' agreement—was the "final word" on the defendant's maximum term of imprisonment. *Id.*

South Carolina, like its northern neighbor, permits its courts to reject parties' negotiated plea agreements. *State v. Nesbitt*, 768 S.E.2d 67, 71 n.7 (S.C. 2015); *Reed v. Becka*, 511 S.E.2d 396, 401–02 (S.C. Ct. App. 1999). Mr. Young's sentencing exposure therefore rises and falls with the text of the state's sentencing statute. Under S.C. Code Ann. § 44-53-375(B)(3), Mr. Young faced up to thirty years in prison for his two January 2005 convictions. These convictions therefore satisfied ACCA's sentencing-exposure requirement.

9

## III.

Mr. Young's January 2005 convictions under S.C. Code Ann. § 44-53-375(B)(3) both qualify as "serious drug offenses." The district court erred by holding otherwise. We reverse the district court's ruling, vacate Mr. Young's sentence, and remand for resentencing consistent with this opinion.

*REVERSED, VACATED, AND REMANDED WITH INSTRUCTIONS*